UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESORO REFINING AND MARKETING COMPANY,<br><br>                                      Plaintiff,<br><br>v.<br><br>CALIFORNIA FINEST OIL, et al.,<br><br>                                      Defendants. | Case No.:  12-CV-1312-WVG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES**<br><br>[DOC. NO. 101] |

## I.     INTRODUCTION

Pending before the Court is Plaintiff Tesoro Refining and Marketing Company's ("Plaintiff") Motion to Enforce the Settlement Agreement ("Motion"). (Doc. No. 101.) Plaintiff seeks an order: (1) compelling Defendants[1] to pay $75,000.00 immediately per the parties' Settlement Agreement; (2) entering judgment, jointly and severally, against each of the Defendants for the outstanding amount, $75,000.00, pursuant to California Code of Civil Procedure Section 664.6 which is made applicable pursuant to Section 16 of the Settlement Agreement; and (3) ordering Defendants to pay Plaintiff's attorneys' fees

---

[1] The named Defendants in this lawsuit are California Finest Oil, Raad Attisha, Hossom Theweny, and Nazar Theweny.

associated with preparing and filing this Motion, pursuant to Section 17 of the Settlement Agreement, or, as an alternative basis for recovering its attorneys' fees, Plaintiff asks the Court to issue monetary sanctions under its inherent authority in the total amount of Plaintiff's attorneys' fees associated with this Motion.  Plaintiff also asks that this Court extend its jurisdiction over the settlement in this case for another year to ensure that the settlement is performed. (Doc. No. 101 at 2.)

For the reasons set forth below, the Court hereby **GRANTS** Plaintiff's Motion and **ORDERS** the Clerk of this Court to enter judgment in favor of Plaintiff in the amount of $83,714.00 (the outstanding amount of $75,000.00 plus reasonable attorneys' fees of $8,714.00).

## II.    BACKGROUND

According to Plaintiff, the instant litigation arises from the wrongful premature termination and breach by Defendants of various agreements, including, but not limited to a Retail Sales Agreement ("RSA") which was entered by and between Plaintiff and Defendant California Finest Oil on November 15, 2009.  The RSA obligated Defendant California Finest Oil to purchase fuel from Plaintiff for sale to consumers at a motor fuel dispensing station, located in San Diego, California (the "Station"), which Defendant California Finest Oil agreed to operate under the Shell brand for ten years.

On or about November 17, 2009, Defendants Raad Attisha and Nazar Theweny each executed an Unconditional Guaranty for the benefit of Plaintiff in connection with any debt or obligation owed by Defendant California Finest Oil to Plaintiff.  On or about November 19, 2009, Defendant Hossom Theweny executed an Unconditional Guaranty for the benefit of Plaintiff in connection with any debt or obligation owed by Defendant California Finest Oil to Plaintiff.

Also according to Plaintiff, on March 22, 2012, Defendants intentionally breached the RSA and Unconditional Guaranty by, among other things, (i) failing to purchase their minimum fuel requirements from Plaintiff; (ii) partially de-branding the Station; and (iii)

1  continuing to use Shell trademarks without proper authorization or license.  As a result,
2  Plaintiff initiated this lawsuit against Defendants on May 31, 2012.

3  On January 16, 2014, the parties entered into the Settlement Agreement to settle all
4  claims related to this lawsuit.  Under the Settlement Agreement, Defendants agreed to pay
5  Plaintiff the total sum of $225,000.00 over the course of three years, beginning in 2014 and
6  ending in 2016, in three annual payments of $75,000.00 per payment.  (Doc. No. 101-1 at
7  6; See Settlement Agreement at Section 3, attached as Exhibit A to Declaration of Jeffrey
8  M. Hamerling ("Hamerling Decl.").)  The Settlement Agreement was signed by all parties
9  and their counsel on February 10-13, 2014.  Id. at 11–13.

10  The first payment of $75,000.00 was to be remitted on or before May 1, 2014.  (See
11  Settlement Agreement at Section 3.)  The second payment of $75,000.00 was to be remitted
12  on or before May 1, 2015, and the third and final payment of $75,000.00 was to be remitted
13  on or before May 1, 2016.  Id.  Under the Settlement Agreement, settlement payments are
14  to be delivered to the law firm of Archer Norris, Plaintiff's counsel's law firm, to the
15  attention of Jeffrey M. Hamerling.  Id.

16  **III.   PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

17  Defendants failed to timely remit the first payment under the Agreement, causing
18  Plaintiff to prepare and file a motion to compel enforcement of the Settlement Agreement
19  on May 30, 2014. (Doc. No. 98.)  Defendants eventually made that payment and Plaintiff
20  withdrew its motion to enforce the Agreement on June 20, 2014.  (Doc. No. 99.)

21  In the instant Motion, Plaintiff asserts that Defendants have failed to pay the third
22  settlement payment of $75,000.00 to either Archer Norris or Plaintiff.  On June 1, 2016,
23  Plaintiff's in-house counsel sent a meet-and-confer letter to Defense counsel, demanding
24  payment of the third settlement installment by June 15, 2016, or confirmation that the
25  payment was sent with proof of mailing and/or delivery of the payment.

26  To date, Defendants have failed to respond to Plaintiff's meet-and-confer
27  correspondence and have failed to pay the third settlement payment.  Defendants were to
28  pay $75,000.00 to Plaintiff by May 1, 2016, pursuant to the terms of the Settlement

3
12-CV-1312-WVG

1  Agreement.  However, Defendants failed to remit all settlement payments as required, and
2  currently owe Plaintiff $75,000.00 under the terms of the Agreement.

3  On June 30, 2016, Plaintiff filed the instant Motion.  (Doc. No. 101.)  On July 11,
4  2016, this Court issued a briefing schedule and ordered Defendants to file a response to
5  Plaintiff's Motion by July 22, 2016.  (Doc. No. 102.)  The Court set a hearing on Plaintiff's
6  Motion to be held on July 28, 2016, at 9:00 a.m., in Courtroom 2A of the above-entitled
7  Court.  Id. at 2.  The Court explicitly ordered counsel for all parties to be present for the
8  hearing.  Id.

9  Defendants failed to file a response to Plaintiff's Motion, as ordered by the Court.
10 Defendants failed to appear before this Court for the motion hearing, also as ordered by the
11 Court.  On July 28, 2016, at 9:00 a.m., the Court went on the record for the motion hearing.
12 Plaintiff's counsel, Mr. David Marchiano, participated telephonically in the hearing, with
13 the advance permission of the Court.  On the record, the Court noted that it was after 9:00
14 a.m., the start time for the hearing, no Defendant was present, and Defense counsel also
15 had failed to appear, failed to file a response to Plaintiff's Motion, and had not contacted
16 the Court to provide an explanation.

17 While on the record, Plaintiff's counsel stated that his firm sent a letter to Defense
18 counsel on June 1, 2016, seeking payment of the $75,000.00 owed under the Settlement
19 Agreement.  Plaintiff's counsel represented to the Court that he did not receive a response
20 from Defense counsel.  Plaintiff's counsel also stated that, on July 5, 2016, he left a
21 voicemail for Defense counsel.  Plaintiff's counsel represented to the Court that he did not
22 receive a response from Defense counsel.  The Court remained on the record until 9:11
23 a.m.  Neither Defendants nor Defense counsel appeared or called the Court to provide an
24 explanation.  To date, Defendants have not filed the Court-ordered response to Plaintiff's
25 Motion.

26 On July 29, 2016, the Court issued an Order Following Hearing on Plaintiff's Motion
27 to Enforce Settlement; Ordering Defendants to Respond to Plaintiff's Motion by August
28 12, 2016.  (Doc. No. 104.)  The Court stated that it was prepared to issue an order granting

Plaintiff's Motion, but noted that it would hold the order in abeyance and allow Defendants one final opportunity to file a response to Plaintiff's Motion. (Doc. No. 104 at 3.) Defendants were ordered to file a response to Plaintiff's Motion by August 12, 2016. Id. The Court stated that, should Defendants fail to file a response by the deadline, the Court was prepared to issue an Order Granting Plaintiff's Motion to Enforce the Settlement on August 15, 2016. Id.

### IV.  DISCUSSION

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." Facebook, Inc. v. ConnectU, Inc., 2008 WL 8820476, at *2 (N.D.Cal. Jun. 25, 2008) (quoting Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987)). "Once a settlement has been reached in a pending action, any party to the agreement may bring a motion to enforce it." Id. (citing Doi v. Halekulani Corp., 276 F.3d 1131, 1135 (9th Cir. 2002)). "[T]he court's enforcement powers include the inherent authority to order a party's specific performance of acts required by the settlement agreement and to award damages or other sanctions for noncompliance." Id. at 3 (citing TNT Mktg., Inc. v. Agresti, 796 F.2d 276, 278 9th Cir. 1986)); Makua v. Panetta, 2012 WL 2370620, at *2 (D.Hawai'i Feb.28, 2012) ("A breach or violation of a settlement agreement entitles the non-breaching party to specific performance or an award of unliquidated damages, as appropriate.").

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1990). As applicable here, "California has a strong policy in favor of enforcing settlement agreements." Facebook, 2008 WL 8820476, at *4 (citing Osumi v. Sutton, 151 Cal.App.4th 1355, 1357, 60 Cal.Rptr.3d 693 (2007)). California law provides:

> If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement.

Facebook, 2008 WL 8820476, at *3 (quoting Cal.Civ.Proc.Code § 664.6).  See Scott v. Napolitano, 2012 WL 2836186 (S.D.Cal. Jul. 10, 2010) (enforcing signed settlement agreement as complete and binding under California law); Bryant v. Amtrak, 2011 WL 291233 (S.D.Cal. Jan.26, 2011) (same).

Further, "a settlement agreement 'must be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting.'"  Facebook, 2008 WL 8820476, at *4 (quoting Roden v. Bergen Brunswig Corp., 107 Cal.App.4th 620, 625, 132 Cal.Rptr.2d 549 (2003)); see also Cal. Civ.Code, § 1636.  "When the agreement is in writing, 'the intention ... is to be ascertained from the writing alone, if possible.'"  Id. (quoting Brinton v. Bankers Pension Serv., Inc., 76 Cal.App.4th 550, 559, 90 Cal.Rptr.2d 469 (1999); see Cal. Civ.Code § 1639.  Though "[a] settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain," Id. (quoting Lindsay v. Lewandowski, 139 Cal.App.4th 1618, 1622, 43 Cal.Rptr.3d 846 (2006)), "courts will not set aside contracts for mere subjective misinterpretation."  Id. (quoting Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal.App.4th 1410, 1421, 49 Cal.Rptr.2d 191 (1996)).

In the Ninth Circuit, courts can retain ancillary jurisdiction over settlement agreements in cases dismissed with prejudice, provided that the parties consent and the retention of jurisdiction is in the order of dismissal.  See K.C. Torlakson, 762 F.3d 963, 967 (9th Cir. 2014).

Here, Defendants, by and through counsel, acknowledged that they fully understood the terms of the Settlement Agreement and agreed to be bound by those terms.  Defendants raise no objection to the Agreement's existence or terms.  Of course any objection raised now would be highly dubious given Defendants' initial compliance with the agreement by making the first two of three annual payments.  Moreover, Defendants have not asserted duress, fraud, or any other challenge to the Agreement's validity or enforceability.  Rather, Defendants have simply failed to perform by making the third and final payment.

On February 14, 2014, the District Judge dismissed this case with prejudice. (Doc. No. 96.) On April 2, 2014, the District Judge ordered this Court to retain jurisdiction over the settlement until June 30, 2016. (Doc. No. 97.) The Order of Consent was signed by all parties and all counsel. Id. Plaintiff filed its Motion to Enforce the Settlement on June 30, 2016. (Doc. No. 101.) Therefore, this Court has jurisdiction to rule on Plaintiff's Motion.

## V.    PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES

In its Motion, Plaintiff requests that the Court order Defendants to pay Plaintiff's attorneys' fees associated with preparing and filing the Motion, pursuant to Section 17 of the Settlement Agreement. (Doc. No. 101 at 2.) As an alternative basis for recovering its attorneys' fees, Plaintiff asks the Court to issue monetary sanctions under its inherent authority in the total amount of Plaintiff's attorneys' fees associated with the Motion.

On July 29, 2016, after the hearing on Plaintiff's Motion, the Court ordered Plaintiff's counsel to lodge an itemized computation of attorneys' fees and costs incurred to enforce the Agreement by August 10, 2016. (Doc. No. 104 at 3.) Plaintiff's counsel was ordered to include a declaration, along with time sheets, a statement of costs, and an explanation of all work performed. Id.

### A. SETTLEMENT AGREEMENT, SECTION 17

Pursuant to the express terms of the Settlement Agreement (Section 17), the prevailing party shall be entitled to attorneys' fees and costs incurred in connection with enforcing the Agreement. Specifically, the Agreement provides:

> Should suit be brought to enforce or interpret any part of this AGREEMENT, the "prevailing party" shall be entitled to recover as an element of costs of suit and not as damages, reasonable attorneys' fees to be fixed by the Court, The "prevailing party" shall be the party entitled to recover his/her/its costs of suit, regardless of whether such suit proceeds to final judgment.

(Doc. No. 101-1 at 10.)

//
//

## B. **COURT'S INHERENT AUTHORITY**

A trial court has the discretion to impose a wide array of sanctions under its inherent authority, and "assessment of attorney's fees is undoubtedly within a court's inherent powers." Chambers v. NASCO, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). A district court may award sanctions in the form of attorney's fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (discussing a sanction against an attorney). Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior "constituted or was tantamount to bad faith." Id. A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." Id. at 649. The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and "preserves a balance between protecting the court's integrity and encouraging meritorious arguments." Id. Additionally, the amount of monetary sanctions must be "reasonable." Brown v. Baden (In re Yagman), 796 F.2d 1165, 1184 (9th Cir. 1986), as amended by 803 F.2d 1085 (1986) (reviewing a Rule 11 sanction but announcing a standard applicable to other sanctions as well).

Here, the Court finds monetary sanctions to be appropriate under the Court's inherent authority due to the evidence presented which demonstrates that Defendants have failed to fulfill their express obligation under the terms of the Settlement Agreement. The Court finds that Defendants' wilful disregard of its obligation, failure to comply with two Court Orders requiring a response to Plaintiff's Motion (Doc. Nos. 102, 104), and failure to appear at a Motion hearing as ordered by the Court, have resulted in prejudice to Plaintiff, unnecessarily expended Court resources, and "constituted or was tantamount to bad faith." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

//
//

The Ninth Circuit has suggested twelve factors which should be considered by the district court in awarding attorney's fees. Kerr v. Screen Extras Guild, 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); see also General Signal Corp. v. Donalico, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986). These factors were developed by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir.1974) and approved by the Ninth Circuit in Kerr. The Johnson–Kerr factors include the novelty and difficulty of the issues involved in a case, the skill required to litigate those issues, the preclusion of other employment, the customary fee, relevant time constraints, the amount at stake and the results obtained, the experience, reputation, and ability of the attorneys, the nature and length of their professional relationship with the client, the "undesirability" of a case, and awards in similar suits. United Steelworkers v. Phelps Dodge Corp., 896 F.2d 403, 406 n.3 (9th Cir. 1990).

An application for an award of fees and expenses should disclose the nature of the services rendered, the amount of attorney time spent, and the rates at which the time was billed to the client. Henry v. Gill Industries, Inc., 983 F.2d 943, 946 (9th Cir. 1993). A fee award may be based on the affidavits of counsel so long as they are sufficiently detailed to enable to court to consider all factors necessary in setting fees. Id.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In calculating a reasonable number of hours, the Court "should exclude . . . hours that were not 'reasonably expended.' . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley, 461 U.S. at 434. In other words, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." Id.

The Court must also determine whether the requested hourly rates are reasonable. "Fee applicants have the burden of producing evidence that their requested fees are in line

with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1110–11 (9th Cir. 2014). To determine the prevailing market rates, courts should consider "the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." Davis v. City & Cnty. of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992), vacated in part on other grounds on denial of reh'g, 984 F.2d 345 (9th Cir. 1993). The relevant legal community is "the forum in which the district court sits." Gonzalez v. City of Maywood, 729 F.3d 1196, 1205–06 (9th Cir. 2013); see also Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010).

"Importantly, the fee applicant has the burden of producing 'satisfactory evidence' that the rates he requests meet these standards." Gonzalez, 729 F.3d at 1206. The applicant meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); see also Chaudhry, 751 F.3d at 1110–11 ("Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate.") Once the applicant carries his burden of providing satisfactory evidence, the burden then shifts to the opposing party to rebut such evidence. See id.

The Ninth Circuit has agreed with the approach of other circuits that have held that judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees. See Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam) ("We conclude that the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience...")

//
//
//

## C. DISCUSSION REGARDING REQUESTED ATTORNEYS' FEES

On August 3, 2016, Plaintiff's counsel lodged an itemized computation of attorneys' fees, along with a declaration of Mr. Marchiano, Plaintiff's counsel. In his declaration, Mr. Marchiano states that Plaintiff seeks an award of $8,714.00 in attorneys' fees for 27.60 hours expended by attorneys Jeffrey M. Hamerling, Matthew S. Covington, and Mr. Marchiano. Mr. Marchiano lodged the attorneys' time sheets for June, July, and August 2016, which include details about all work performed in connection with their attempts to enforce the Settlement Agreement.

Mr. Marchiano declares that the attorneys' fees incurred in connection with his work enforcing the Settlement Agreement total $6,608.00, which is $295.00 multiplied by 22.40 hours. Mr. Marchiano is a Senior Associate at Archer Norris in Walnut Creek, California. He has been practicing law for nearly seven years. His hourly rate for this matter is $295.00, which he declares to be customary and reasonable in light of his experience and the prevailing rates charged by attorneys in his community. Mr. Marchiano billed a total of 22.40 hours for time expended on this case to enforce the Settlement Agreement.

Mr. Marchiano declares that the attorneys' fees incurred in connection with Mr. Hamerling's work enforcing the Settlement Agreement total $202.50, which is $405.00 multiplied by 0.50 hours. Mr. Hamerling is a partner at Archer Norris in Walnut Creek, California. He has been practicing law for more than 35 years. His hourly rate for this matter is $405.00, which Mr. Marchiano declares is customary and reasonable in light of Mr. Hamerling's experience and the prevailing rates charged by attorneys in his community. Mr. Hamerling billed a total of 0.50 hours for time expended on this case to enforce the Settlement Agreement.

Mr. Marchiano declares that the attorneys' fees incurred in connection with Mr. Covington's work enforcing the Settlement Agreement total $1,903.50, which is $405.00 multiplied by 4.70 hours. Mr. Covington is a partner at Archer Norris in San Francisco, California. He has been practicing law for more than 24 years. His hourly rate for this matter is $405.00, which Mr. Marchiano declares is customary and reasonable in light of

Mr. Covington's experience and the prevailing rates charged by attorneys in his community. Mr. Covington billed a total of 4.70 hours for time expended on this case to enforce the Settlement Agreement.

In his declaration, Mr. Marchiano notes that the attorneys' fees sought are more than Plaintiff initially estimated at the time of filing Plaintiff's Motion. However, Mr. Marchiano states that the time billed reflects an accurate account of the time spent enforcing the Settlement Agreement. Plaintiff's initial estimate of fees incurred did not account for time spent by any attorney after approximately 10:00 a.m. on June 30, 2016. It also did not include time spent working on certain components of the Motion, such as two declarations filed in support of the Motion and the Judgment and Order. The initial estimate did not include the time spent preparing for the hearing or drafting Mr. Marchiano's declaration. Further, the initial estimate of fees incurred was computed using an hourly rate for Mr. Marchiano of $285.00 per hour instead of his actual rate of $295.00 per hour for this matter.

The Court has conducted a thorough review of Plaintiff's counsel's Declaration and the corresponding billing statements. Defendants have not filed an objection or opposition to Plaintiff's request. Given the overwhelming evidence presented to the Court to demonstrate that Defendants have failed to fulfill their obligations under the Settlement Agreement, and the efforts undertaken by Plaintiff's counsel to recoup payment under the terms of the Agreement, the Court finds that all of Plaintiff's requested fees are reasonable and appropriate.

Defendant seeks reimbursement for attorney's fees at the rate of $405.00 per hour for partner Jeffrey Hamerling, $405.00 per hour for partner Matthew Covington, and $295.00 per hour for senior associate David Marchiano. In his Declaration, Mr. Marchiano states that he is informed and believes that these hourly rates are customary and reasonable for the Walnut Creek and San Francisco communities in light of the experience of the attorneys.

Mr. Marchiano was admitted to practice law on December 1, 2009. His practice with Archer Norris, A Professional Law Corporation, focuses on civil litigation. This Court relies on Mr. Marchiano's declaration, as well as the Court's own knowledge of customary rates and its experience concerning reasonable and proper fees, and determines that Plaintiff's counsel's requested hourly rates of $405.00 and $295.00 are in line with the prevailing market rates in the San Francisco area for attorneys of comparable skill, level, and experience for work on matters of similar complexity. See Gonzalez, 729 F.3d at 1206; see also Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011). It is also notable that Defendants do not dispute the reasonableness of the stated hourly rates of Plaintiff's counsel.

The Court finds that Plaintiff's billing entries are reasonable for the work performed, and that Plaintiff's counsel's hourly rates are likewise reasonable. At a rate of $405.00 and $295.00 per hour, Plaintiff's counsel's reasonable attorney's fees for this matter total $8,714.00. The Court hereby **AWARDS** Plaintiff the amount of **$8,714.00** in attorney's fees pursuant to this Court's inherent authority, and in accordance with Section 17 of the Settlement Agreement. Defendants shall submit payment of the awarded attorneys' fees to Plaintiff's counsel no later than **August 22, 2016**.

## VI. CONCLUSION

This Court finds the Settlement Agreement to be complete and binding, finds that Defendants have failed to perform as promised pursuant to the terms of the Agreement, and finds that Defendants have failed to assert any basis for denying enforcement. The Court hereby **GRANTS** in part Plaintiff's Motion to Enforce the Settlement Agreement, and enters the following orders:

1. The Court **DENIES** Plaintiff's request for the Court to retain jurisdiction over the Settlement Agreement for an additional year.
2. The Clerk of this Court shall **ENTER JUDGMENT**, jointly and severally, against each of the Defendants for the outstanding amount of $83,714.00.

//

13
12-CV-1312-WVG

3. Defendants are **ORDERED** to immediately pay the following amount to Plaintiff:

    a. Damages due to Plaintiff: $75,000.00

    b. Attorneys' fees: $8,714.00

        i. **TOTAL: $83,714.00**

**IT IS SO ORDERED.**

Dated: August 15, 2016

Hon. William V. Gallo
United States Magistrate Judge